The opinion of the Court was delivered by
"Wither.-, J.
The admission of a party, against his interest, is received upon the footing of presumptive evidence, since an ordinary knowledge of human nature teaches, that untrue admissions or confessions are not voluntarily made when- they must prejudice the interests of the party who makes them. As the effect becomes more or less momentous, as the will is more or less free, the understanding more or less deliberate, so the presumption will grow stronger or weaker. And although it might seem, a priori, that any admission should be placed before a jury, to be weighed according to all qualifying circumstances, yet the observation of those, whose painful and practical experi ence has led them into familiarity with that confusion and pros *400 tration of faculties which a load of deep guilt, to which is added anxious suspicion or heavy accusation, commonly visits upon those on whom the iron hand of the criminal law has been placed, has led to a resolution to exclude confessions by the accused, made under certain circumstances, from the consideration of the jury, as affording a medium little fit to reveal the truth in an issue so great as life and death. Hence we have the judgment of English jurists against the admissibility of a confession obtained by temporal inducement, held out in the shape of threat, promise or hope of favor, touching one’s escape from the charge against him, by a person in authority, or where such person appeared to sanction such threat or inducement, and a master or mistress, or prosecutor, is placed, in this respect, in the category of one in authority. The foundation of all rules, and of the ruling in each individual case, upon this subject, rests upon an anxiety to exclude confessions that are probably not true : and, therefore, to exclude those that are not voluntary, because such are probably untrue. To draw the line of distinction, to be determined by the condition of the moral faculties of a human being, which shall separate the voluntary from the constrained or perverted exercise of those faculties, presents the task of difficulty. The question concerns the competence of evidence ; it is addressed to the presiding Judge; it comes modified by ever varying circumstances ; in many it may be affected by the danger of mendacity or incompleteness of representation: likewise of misinterpretation of what was said, causes that have produced, in the annals of English jurisprudence especially, every variety of example for the admission and exclusion of confessions, and has generated some tendency to submit, more frequently, this species of evidence to the ordeal of the jury. It has been aptly observed by one of the Judges in Massachusetts, (9 Pick. 502, in 1830,) “ the question does not depend upon authorities, but upon general principles.” Those general principles have already been indicated.
The first question in this case is,- whether the confession or admissions of the prisoner to Boyd should have been excluded *401 from the jury. It must depend upon whether the agitation of the prisoner’s hope or fear, by promise, inducement or threat, was such as to exclude what he said, upon the principle, that his disclosures were not voluntary. Boyd was not in any position of authority over the prisoner: though the latter was riding in his buggy, as a convenient mode of transportation, two constables being in the rear, hard by, yet not within hearing. No inducement or threat was held out by Boyd, though he conversed with the prisoner, and by interrogation drew out the matter of his admissions. The objection to the admissibility of the evidence in question is founded upon a remark, by a special constable, (Broughton), addressed, in a familiar way, to the prisoner, some hours before the disclosures were made, on the occasion of his arrest, and after suspicious circumstances had appeared. It was this, “ Come, Jack, you might as well out with it.” Immediately, however, the magistrate, very judiciously, interposed, and (as he testified upon the trial) “ fully explained his condition to the prisoner, and solemnly warned him against making confessions.” The words attributed to the magistrate, on that occasion, were these : “No, Vaigneur, the evidence we have taken will not be brought against you ; you will be put on your trial for your life and death, and it behooves you to make no confession at all.”
The observation of Broughton can scarcely be regarded as any inducement at all. The manner and the import of it, each, would seem to exclude the idea, that the mind of the prisoner was likely to be seriously impressed by its influence. Instantly the magistrate interposed, and said that which was amply sufficient to counteract and obliterate any impression that perchance had been made by the words of Broughton. Such appears, in fact, to have been the effect of the magistrate’s interposition, because we find that Broughton was checked and the prisoner made no observation at all.
If we look to the weight of inducement held out, to the counteracting agency employed, to the intervening time, and compare this case, in these and such particulars, with that of Kirby, (1 *402 Strob. 378.) and if we also recollect that Kirby’s confession was the sole ground upon which his conviction rested, the conclusion is irresistible, that what the prisoner said to Boyd was clearly admissible in evidence. The question was twice before this Court in Kirby's case, upon the point we are reviewing: it was deliberately adjudged on both occasions, is considered by us a leading case upon this question, and decides it against the motion in the present instance.
A point of more novel import with us arises upon the fact, that the prisoner was examined as a witness, and as other witnesses were, before the coroner’s inquest, and what he said, as such witness, was given in evidence on the trial.
He was not suspected of the felony. No one was then arrested, perhaps none the object of any pointed suspicion. All that he said before the coroner’s inquest was to this effect: that he knew not who killed Mrs. Wall, nor how she came to her death; that the day before he had been hunting ; called, on his return, at Sam. Wall’s (the husband of the deceased) about 1 o’clock, or later ; joined Sam. Wall in shooting at a mark : took one or two drinks with him, but was not drunk.
' Soon after this the prisoner was asked by some one to deliver one of his boots, which being applied to tracks about the scene of the murder, betrayed strong ground of suspicion against him ; he was then asked where his gun was, and what kind of shot he had used the day before. He answered his gun was at his mother’s, and that he had used low mould shot. This was followed by further investigation, which disclosed a probable falsehood as to the character of the shot he had used.
For the prisoner it is urged, that what he said before the coroner’s inquest was erroneously received in evidence on the trial.
It is proper to remark, that he said nothing before the inquest that was in the nature of a confession. He, in fact, denied there all knowledge of-the felony. Yet, if any rule of criminal law excludes such evidence, ex vi termini, it would not be proper to speculate upon the effect of it, as the criterion to control the individual case.
*403 Nisi prius judgments in. the English Courts have not been uniform upon the question. It is not improbable that the necessary exclusion of the examination of a prisoner, on oath, before a magistrate, as an examination under the Statute of Phil. Sp Mary, has operated to affect opinions as to testimony derived from one, not yet suspected or accused, placed under oath, as a witness merely, by an examining tribunal. The difference, however, is quite material. A witness merely, unsuspected and un-accused, does not look in consternation at the finger of the law publicly pointed at him, foreboding the issue of life and death, with the certainty of incarceration, the ignominy of a trial, and, it may be, conviction and capital punishment. He is not manacled, nor oppressed by the scowl of public indignation or the iron-features of unrelenting jailors, .tie is not beset by the prurient tamperings of restless and anxious curiosity. If, indeed, the perturbation of remorse may act upon his faculties, it is unquestionable, nevertheless, that a confession or any admission growing out of such an origin, exclusively, is wholly untainted by any objectionable quality as evidence. There remains nothing but the supposed duress of an oath, administered by a power capable (as is said) of applying. a sanction that shall exact an answer. Now, in reality, there is no power, in any tribunal known to the common law, to exact an answer that may implicate a witness in or tend to expose him to a criminal charge. It is still alleged, however, that a refusal io answer does, of itself, excite suspicion. That is most true: but the answer is, that suspicion is no proof and can never produce conviction. Any species of conduct of the accused, whether before or after he is charged, may give interpretation to equivocal facts — -may shed a ray of light upon the whole scene, may develope intention, motive, and accordingly the conduct of a prisoner is a source of evidence, sometimes for him as well as the prosecution, and was so in this case, for it was proved he escaped several times, and his singular behaviour was invoked to raise an idea that he was scarcely a responsible agent. His refusal to answer a question propounded appears to be of the same grade of evidence, since *404 what he may say or refuse to say, and what he may do, may all proceed from the very same influences. It has not been understood that the prosecuting authority can be rightfully excluded from such a source of circumstantial evidence.
If it be still urged that the shield of personal immunity against self-accusation, which the law throws around a witness, may be unavailing to one so little likely to know and to exercise his right as this prisoner, that he spoke without counsel or warning, that his feebleness, in every way, was but a snare to entrap him, we must reply that the instinct of nature suggests a resort to the very shield that the law allows; that no counsel or warning can be necessary to one who, unsuspected, appears in the character of an ordinary witness; that the testimony of the prisoner before the coroner demonstrates that he was not thrown from his balance, in point of fact, for he stated nothing that could have implicated an innocent man. It is not a case in which a word has been sworn to by a prisoner, or a witness who was afterwards made a prisoner, which, of itself, admitted or implied his guilt. Where a confession, in itself objectionable, leads to the ascertainment of a fact, admissible in evidence and material in the case, the later practice and authorities teach us that so much of such confession as relates strictly to the fact, may be received in evidence : and this, on the principle, that so much of the confession is established to be true: and the foundation of the whole doctrine is, that the jury ought to hear whatever is true, and are entitled to look for the truth through any and every medium that may be calculated to reveal it.
Mr. Joy, in his work on the admissibility of confessions, (sec. 8, p. 62,) lays down the following proposition, “ A statement, not compulsory, made by a party, not at the time a prisoner, is admissible in evidence against himand the reason assigned is, that one, in his capacity of witness, might refuse to answer a question that has a tendency to expose him to a criminal charge: hence an answer to such becomes a voluntary statement, since he might refuse to make any.
*405 This appears to be a sound legal theory. It cannot be met by the circumstance, of a particular case, that a witness may not know the extent of his personal security under the law, for ignorance of the law excuses no one, though that circumstance, with an infinite number of other variations, while it affects not the competency, may afford apt matter of strong observation to the jury. The doctrine has had the confirmation of the English bench, on the point reserved, in Wheater’s case, which is certainly entitled to more weight than some nisi prius decisions to the contrary, which last went on the footing that the examination of a witness, on oath, was not distinguishable from that of a prisoner on oath, though the latter is forbidden by the statute of Phil. &. Mary.
We are thus conducted to the conclusion, and order accordingly, that the motion, on behalf of the prisoner, for a new trial be refused.
O’Neall, Evans, Wardlaw and Whitner, JJ. concurred.

Motion refused.